IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 08-cv-00265-WYD-MEH

BRADDOCK FINANCIAL CORPORATION,

    Plaintiff,

v.

WASHINGTON MUTUAL BANK,

    Defendant.

# ORDER

THIS MATTER is before the Court on Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) [doc. #19, filed March 28, 2008]. Plaintiff responded to the Motion on April 21, 2008 [doc. #26], and Defendant replied on May 7, 2008 [doc. #36]. Having considered the Motion, response, reply, and the pertinent exhibits, I enter the following written Order.

## FACTUAL BACKGROUND

Plaintiff's Complaint, filed on February 7, 2008, makes the following allegations. On May 24, 2002, Defendant Washington Mutual Bank entered into a Mortgage Loan Purchase and Sale Agreement ("Purchase and Sale Agreement") with Countrywide Home Loans, Inc. ("Countrywide"). Complaint at 3; *see* Motion Ex. 1. Pursuant to that agreement, Countrywide purchased from Defendant a number of residential mortgage loans. Complaint at 3. The Purchase and Sale Agreement specifically provided that Countrywide "may desire to sell some or all of the mortgage loans to one or more

purchasers as a whole loan transfer, or a public or private mortgage-backed securities transaction." Motion Ex. A at 1; *see* Complaint at 3-4. That same day, Defendant and Countrywide entered into a Servicing Agreement, which provided that Defendant would be obligated to service the loans in accordance with the Servicing Agreement and to act in the best interests of Countrywide and any successor owner of the mortgage loans. Complaint at 4. It further provided that Defendant "shall establish and maintain one or more Accounts . . . as agent, trustee, and/or bailee for [Countrywide] and/or various mortgagors and/or various owners." Motion Ex. B at 14. It also provided that in event of Defendant's default the owner "may, in addition to whatever rights Owner may have at law or equity, including injunctive relief and specific performance, commence termination of all the rights and exercise any and all other remedies available at law or at equity." *Id.* at 34.

On September 1, 2002, Countrywide entered into a Pooling and Servicing Agreement with a number of parties regarding the Reperforming Loan REMIC (Real Estate Mortgage Investment Conduit) Trust Certificates. Complaint at 5. The Pooling and Servicing Agreement created a trust fund, which included some of the mortgage loans that were part of the Purchase and Sale Agreement, and contemplated that the beneficial interests in the trust fund would be sold in multiple classes of pass-through certificates. *Id.* At the same time, Countrywide, Defendant, and newly appointed trustee Wells Fargo Bank Minnesota, N.A. ("Wells Fargo") entered into a Reconstituted Servicing Agreement in which Countrywide assigned its interests under the Purchase and Sale Agreement and the original Servicing Agreement to Wells Fargo. *Id.* Although

not mentioned in the Complaint, Defendant has submitted a copy of an additional Reconstituted Servicing Agreement, dated February 1, 2003.  *See* Motion at 3; Ex. D.  Both Reconstituted Servicing Agreements provided that Wells Fargo "assumes for the benefit of the holders of the Reperforming Loan Trust [certificates, Countrywide, and Defendant] all of [Countrywide's] obligations under the Purchase and Servicing Agreements."  Ex. C at 1; Ex. D at 1.

On or about October 15, 2002, Plaintiff Braddock Financial Corporation ("Braddock"), as investment advisor for its Galena Street Fund, L.P. ("Galena"), caused Galena to purchase interests in the Reperforming Loan REMIC Trust Certificates, governed by the September 1, 2002 Pooling and Servicing Agreement.  Complaint at 5.  On or about February 1, 2003, Countrywide entered into another agreement similar to the September 1, 2002 Pooling and Servicing Agreement, and on or about April 3, 2003, Plaintiff caused Galena to purchase certificates governed by the later agreement.  *Id.* at 6.[1]

Plaintiff alleges that Defendant has failed to service the loans and remit funds to the trusts in a manner consistent with the Service Agreements and the industry standards made applicable under its terms.  *Id.*  Defendant allegedly

> over-advanced millions of dollars to senior certificate holders and subsequently recaptured that amount in an improper fashion, by directly writing down the most junior certificate holders' (including [Plaintiff's]) balances, instead of recapturing the principal from the senior certificate

---

[1] Defendant has attached to its Motion copies of the Purchase and Sale Agreement, Servicing Agreement, and both Reconstituted Servicing Agreements.  *See* Motion Ex. A-D.  However, the Court does not have before it any copies of either one of the Pooling and Servicing Agreements.

> holders who received the improper advances, or properly withholding the amount of the improper advances from subsequent distributions to senior certificate holders.

*Id.* Defendant then allegedly improperly withheld funds from the trusts to repay itself for the improper advances, even though it was entitled to do so only when advances had been made in accordance with the Servicing Agreement and applicable industry standards. *Id.* at 7. Defendant allegedly failed to restore these funds and instead covered the deficiency in the trust by writing down the most junior certificate holders' balances, including those of Plaintiff. *Id.* As a result of these actions, Defendant has passed through significantly greater losses than Countrywide, its co-servicer, on loans within the same trust, as measured by "loss severity." *Id.* at 8. Defendant's loss severity is significantly higher than the average loss severity of other servicers in the mortgage industry. *Id.*

Plaintiff believes it has incurred millions of dollars in damages as a result. *Id.* Accordingly, it alleges causes of action for breach of contract, promissory estoppel, and unjust enrichment, and it seeks damages. *Id.* at 8-11. On March 28, 2008, Defendant filed a Notice of Associated Cases [doc. #18], which indicated that trustee Wells Fargo had brought two cases against Defendant in Superior Court of California for the County of Los Angeles, and both cases were pending at the time of filing. The only information that I could retrieve with regard to these two cases is that the California court has consolidated them, and a three-day trial is set for November 2, 2009.

**ANALYSIS**

**A. Standard**

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court "assume[s] the truth of the plaintiff's well-pleaded factual allegations and view[s] them in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C. v.Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). A complaint survives a motion to dismiss when it "contains 'enough facts to state a claim to relief that is plausible, [not merely conceivable,] on its face.'" *Id*. (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007)). "Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Id*. In addition to the facts alleged in the complaint, a court can consider documents referred to in that complaint and central to the plaintiff's claims. *See, e.g.*, *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253-54 (10th Cir. 2005). Defendant's objection in the present Motion is that Plaintiff lacks standing to assert its claims. Plaintiff bears the burden of establishing that it has standing through "general factual allegations of injury." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

**B. Contract Claim**

Plaintiff has put forward two alternative theories for its standing in the contract claim, both of which took effect when it caused Galena to purchase interests in the trust certificates: first, that Plaintiff became a party to the original Servicing Agreement

between Defendant and Countrywide that Defendant breached, and second, that Plaintiff was an intended third party beneficiary of that contract. Complaint at 8-9. Defendant argues that Plaintiff does not have standing and that trustee Wells Fargo is the real party in interest. Defendant points to the actions Wells Fargo has brought in California state court, through which it argues Plaintiff's claims are appropriately adjudicated.

**1. Choice of Law**

The parties agree that the contract claim is governed by New York law, because the Purchase and Sale Agreement, Servicing Agreement, and Reconstituted Servicing Agreement all expressly provide that they shall be construed, and the parties' relationships governed, by New York law. See Motion Ex. A at 34; Ex. B at 39; Ex. C at 7; Ex. D at 8. They agree that the choice-of-law provisions govern even though a central dispute is Plaintiff's standing to sue under the contract. *See, e.g.*, *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1356 n.15 (6th Cir. 1991) (enforcing choice-of-law provision against party claiming to be third-party beneficiary of agreement although ultimate finding was that party was not third party beneficiary under law of choice).

"In a diversity action, a federal district court must apply the substantive law of the state in which it sits, . . . including principles regarding choice of law." *Vandeventer v. Four Corners Elec. Co.*, 663 F.2d 1016, 1017 (10th Cir. 1981) (citations omitted); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under Colorado law, courts "should apply the law chosen by the parties unless there is no reasonable

basis for their choice or unless applying the law of the state so chosen would be contrary to the fundamental policy of a state whose law would otherwise govern." *Hansen v. GAB Bus. Servs., Inc.*, 876 P.2d 112, 113 (Colo. App. 1994) (citing Restatement (Second) of Conflict of Laws § 187 (1971)). The parties agree that a reasonable relationship to New York exists, as Defendant was incorporated in New York and none of the relevant agreements was entered into or performed in Colorado. *See* Motion at 6; Response at 5 n.3. Accordingly, I find that the contract claim is governed by New York law.

### 2. Whether Plaintiff Is a Party to the Contract

Defendant argues that Plaintiff is not a party to the Servicing Agreements for which it is claiming breach of contract, because Plaintiff "is not listed as a party, did not sign, and is not even mentioned in the [Purchase and Sale Agreement], the Servicing Agreement or the Reconstituted Servicing Agreements." Motion at 7. Defendant argues that as a holder of beneficial interests, Plaintiff owns only a contractual right to receive payments from the trusts, not to the trusts themselves or the assets they hold. Plaintiff argues that it became a party to the Servicing Agreements as a successor owner to Countrywide when it purchased loans in the trusts, essentially because it became a successor owner to Wells Fargo, who was a successor owner to Countrywide. Under the May 24, 2002 Servicing Agreement, Defendant agreed to service mortgage loans for the "Owner," which the Agreement defines as Countrywide "and any successor owner of any of the Mortgage Loans." Response at 6 (citing Motion Ex. B at 5, 8). The Reconstituted Servicing Agreements recognized trustee Wells Fargo

as "an owner of the Mortgage Loans" and "Owner" under the Servicing Agreements, but "Owner" again encompasses "any successor owner," which Plaintiff argues it became. Plaintiff also argues that any ambiguity in the term "Owner" in the Servicing Agreements should be resolved through extrinsic evidence, which requires a denial of the Motion.

If there were inherent ambiguity in the agreements in the present matter that must be resolved by extrinsic evidence, I would not be able to dismiss this claim at this time. *See Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 170-71 (N.Y. 2002) ("Extrinsic evidence of the parties' intent may be considered only if the agreement is ambiguous, which is an issue of law for the courts to decide. A contract is unambiguous if the language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the agreement itself, and concerning which there is no reasonable basis for a difference of opinion.") (citation omitted); *N. River Ins. Co. v. Bishop of Pueblo*, No. 06-cv-01971-WDM-CBS, 2008 WL 280842, at *2 (D. Colo. Jan. 31, 2008) (finding dismissal of a breach of contract claim to be unwarranted where, "according the adverse party the benefit of all reasonable inferences," it would be reasonable to conclude that adverse party was a party to the contract). I find that there are no ambiguities in the contracts at issue in the present matter, and accordingly there is no need for extrinsic evidence to elaborate the definition of "Owner."

As an owner of a beneficial interest in the REMIC trusts, Plaintiff is not a successor owner of the mortgage loans as defined by the contracts at issue. Plaintiff's beneficial ownership is distinct from ownership in the mortgage loans themselves. In *In re Shilo Inn, Diamond Bar, LLC*, 285 B.R. 726 (Bankr. D. Or. 2002), the court concluded

that the claims at issue in that case belonged to the REMIC trusts, not to the owners of certificates representing beneficial interests. *Id.* at 729. The court reasoned:

> First and foremost, the certificate holders in this case hold certificates evidencing a beneficial interest in the trust funds. The trust assets include loans on which debtors are obligated. Debtors are not obligated to the certificate holders. Likewise, the certificate holders do not have any direct interest in the obligations of debtors. Their interest is in the assets of the trusts.

*Id.* Similarly, in the present matter, Plaintiff is an owner of certificates representing beneficial interests, and the successor owner to the Servicing Agreement and Reconstituted Servicing Agreement is the trust, not Plaintiff in its capacity as beneficial owner.

Furthermore, both parties cite Black's Law Dictionary, which in its definition of both "beneficial owner" and "beneficial interest" draws a distinction between equitable ownership, as exercised by a beneficial owner, and legal ownership, as exercised by a trustee. *See* Black's Law Dictionary 107-08 (6th ed. (abridged) 1991). The definition of "beneficial interest" is "interest of the beneficiary in right to income or principal of trust funds, in contrast to the trustee who holds legal title." *Id.* at 107. As the present matter involves a contract dispute and Plaintiff is seeking damages, legal, not equitable, ownership is determinative. Accordingly, I find that Plaintiff is not a party to the contracts at issue.

### 3. Whether Plaintiff Is a Third Party Beneficiary

Plaintiff also argues that it is an intended third party beneficiary of the Servicing Agreements. In order to be a third party beneficiary of a contract under New York law, a party must establish: "(1) the existence of a valid and binding contract between other

parties, (2) that the contract was intended for [its] benefit and (3) that the benefit to [it] is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate [it] if the benefit is lost." *Alicea v. City of New York*, 534 N.Y.S.2d 983, 985 (App. Div. 1988) (internal quotation omitted).[2] The party asserting the beneficiary interest has the burden of demonstrating an enforceable right. *Id.* "The contract must evince a discernible intent to allow recovery for the specific damages to the third party that result from a breach thereof before a cause of action is stated." *Id.* "While a third-party beneficiary is not required to be named in the contract, the contract must demonstrate an intent by the parties to provide the third party with a sufficiently immediate benefit to justify recognition of a cause of action." *Houbigant*, 229 F. Supp. 2d at 217-18. "The best evidence . . . of whether the contracting parties intended a benefit to accrue to a third party can be ascertained from the words of the contract itself. An intent to benefit a third party can also be found when no one other than the third party can recover if the promisor breaches the contract or the language of the contract otherwise clearly evidences an intent to permit enforcement by the third party." *Alicea*, 534 N.Y.S.2d at 985 (internal quotation and citations omitted).[3]

---

[2] Courts have also quoted the Restatement test for third party beneficiary: "A beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either: (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Houbigant, Inc. v. Dev. Specialists, Inc.*, 229 F. Supp. 2d 208, 217 (S.D.N.Y. 2002) (quoting Restatement (Second) of Contracts § 302(1) (1981)).

[3] There is a lack of clarity as to the extent to which surrounding circumstances may be considered. *Compare Trans-Orient Marine Corp. v. Star Trading and Marine, Inc.*, 925, F.2d

The test here is complicated by the trustee-beneficiary relationship between Wells Fargo, who was a party to the Reconstituted Servicing Contracts, and Plaintiff. My research has revealed no authority on point in New York as to whether a trust beneficiary is a third party beneficiary. The case that appears most on point with the present matter is *Asset Securitization Corp. v. Orix Capital Mkts., LLC*, 784 N.Y.S.2d 513 (App. Div. 2004), which held:

> The governing Pooling Service Agreement (PSA), relating to a commercial mortgage-backed securities transaction in which plaintiff issued and sold Commercial Mortgage Pass-Through Certificates, does not authorize plaintiff to commence litigation on behalf of the certificateholders. That authority is committed solely to the trustee of the pooled loans, which is not a party to this action.

*Id.* at 513-14; *cf. LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 180 F. Supp. 2d 465, 470-71 (S.D.N.Y. 2001) (holding that trustee, and not special servicer, was "real party in interest to an action alleging breach of contractual terms" on behalf of trust under terms of Pooling and Servicing Agreement). The distinguishing factors in the present matter are that Plaintiff is suing on its own behalf, not on behalf of all certificate holders, and that the parties have not submitted copies of either of the Pooling and Servicing Agreements for the Court's review. Thus, while this case law does lend strong support to finding that Plaintiff is not a third party beneficiary, I must consider other pertinent factors.

---

566, 573 (2d Cir. 1991) (holding that "it is permissible for the court to look at the surrounding circumstances as well as the agreement"); *with Debary v. Harrah's Operating Co.*, 465 F. Supp. 2d 250, 263 (S.D.N.Y. 2006) (finding that "the parties' intention to benefit the third party must appear from the four corners of the instrument") (internal quotation omitted)). Because this issue is not determinative, I will not attempt to reconcile the lack of clarity.

The authority from other jurisdictions on this issue appears to be divided. *Compare Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 286 (D.C. Cir. 1993) ("The principle that an intended third party beneficiary may sue to enforce a consent decree naturally extends, we think, to allowing the beneficiary of a trust created by a consent decree to sue for enforcement of the consent decree, even where that beneficiary was not a party to the consent decree."); *with Saks v. Damon Raike and Co.*, 8 Cal. Rptr. 2d 869, 877 (Ct. App. 1992) ("The general right of a third party beneficiary to sue on a contract made expressly for his or her benefit has no application where a trust has been created in favor of that party, and the contract in question is between the trustee and an agent of the trustee."). In *Beckett*, the D.C. Circuit reasoned in finding a third party beneficiary relationship that "[j]ust as an intended third party beneficiary may sue to enforce a contract, it is equally fundamental that the beneficiary of a trust may maintain a suit to compel the trustee to perform his duties as a trustee or to redress a breach of trust." 995 F.2d at 286. In contrast, in *Saks*, the California Court of Appeal found no authority supporting the plaintiffs' standing as third party beneficiaries and cited "strong reasons of public policy" in finding that in the case at hand, adopting such a rule would allow the plaintiffs to bring multiple parallel causes of action. 8 Cal. Rptr. 2d at 877. That court found:

> The substantive basis for the real party in interest rule is to prevent just this kind of multiplication of lawsuits arising from the same facts, in order to protect potential defendants from the harassment, vexation, and expense of having to meet several lawsuits from different claimants involving the same claim or demand; and to insure that such defendants will be protected from further annoyance or loss in the future once a judgment is entered in a lawsuit on such a claim.

*Id.* at 877-78. Thus, the suggestion from the case law on point is that a trust beneficiary's status as a third party beneficiary depends on whether the trust beneficiary's rights can otherwise be vindicated.

The comment to the Restatement's section governing third party beneficiaries states the distinction between third party beneficiaries of contracts and trust beneficiaries: "There is a fiduciary relation between . . . trustee and beneficiary, but not between promisor or promisee and beneficiary of a contract." Restatement (Second) of Contracts § 302 cmt. f (1981).[4] The commentary then proceeds to suggest that in the case of a contract where a trustee is a party, the law of trusts governs the trust beneficiary's rights: "Either the promisee or the beneficiary of a promise may be made a trustee of rights arising by virtue of the promise; although the beneficiary of a such a trust is a beneficiary of the promise under this Section, his rights must be enforced in accordance with the law of Trusts." *Id.* Accordingly, I turn to the law of Trusts.[5]

"In most cases, the trustee has exclusive authority to maintain an action on behalf of the trust against a third party." *In re Blumenkrantz*, 824 N.Y.S.2d 884, 888 (Surr. Ct. 2006) (citing *Teamsters v. Terry*, 494 U.S. 558 (1990)). The United States

---

[4] "The New York Court of Appeals has declared Restatement (2d) of Contracts § 302 to be an accurate statement of New York third-party-beneficiary law." *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 124 (2d Cir.2005) (citing *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 485 N.E.2d 208 (N.Y.1985)).

[5] I thus find that the trust relationship is determinative of the third party beneficiary issue in the present matter. This relationship distinguishes the cases Defendant cites for the propositions that mere contemplation in the contract of a benefit to a third party is not enough to establish a third party beneficiary and that individual parties cannot sue under contracts contemplating a collective right of enforcement. It also distinguishes the case, cited by Plaintiff, that finds a third party beneficiary relationship where a contract is made solely for that party's benefit.

-13-

Supreme Court has found that "a trust beneficiary may sue to enforce a contract entered into on his behalf by the trustee if, but only if, the trustee 'improperly refuses or neglects to bring an action against the third person.'" *Bowen v. U.S. Postal Serv.*, 259 U.S. 212, 243 (1983) (quoting Restatement (Second) of Trusts § 282(2) (1959)); *see also Blumenkrantz*, 824 N.Y.S.2d at 888. New York courts have held:

> In an action brought by a beneficiary on behalf of the trust, the beneficiary must show why he has the right to exercise the power, which the law and the trust agreement in the first instance confide in the trustees, to bring a suit on behalf of the trust. This will normally require either a showing of a demand on the trustees to bring the suit, and of a refusal so unjustifiable as to constitute an abuse of the trustee's discretion, or a showing that suit should be brought and that because of the trustees' conflict of interest, or some other reason, it is futile to make such a demand.

*Velez v. Feinstein*, 451 N.Y.S.2d 110, 114-15 (App. Div. 1989); *see also Blumenkrantz*, 824 N.Y.S.2d at 888-89 (finding that where the trustee had a conflict of interest because it was not in its interest to pursue a particular claim on the trust's behalf, the beneficiary could represent the trust in an arbitration proceeding). In a derivative action brought by beneficiaries on behalf of the trust, "the complaint must set forth 'with particularity' the efforts of the plaintiffs to secure the initiation of the action by the trustees, or the reasons for not making such effort." *Velez*, 451 N.Y.S.2d at 115.

Thus, trustee Wells Fargo is the real party in interest to pursue the claims of the trust under the contract, unless Plaintiff can show that Wells Fargo has refused to pursue claims on its behalf or that a demand upon Wells Fargo to do so would be futile. Plaintiff argues that of the certificate holders in the present matter, it is the investor with the most junior interests, who thus "suffered the most significant, if not unique, injury at the hands of [Defendant], and should not be forced to rely on the Trustee for

vindication." Response at 10 n.9. Plaintiff and Defendant disagree as to the nature of Wells Fargo's pending California actions against Defendant. Plaintiff argues that "those actions only seek access to underlying service documents (because [Defendant] has refused for more than a year to grant access to those documents) and do not raise a single substantive claim against [Defendant] for improper servicing." Response at 9 n.6. Defendant responds that "[t]he only possible reason for [Wells Fargo] to seek these records is to evaluate whether claims for damages should be pursued. Indeed, [Wells Fargo's] counsel has communicated that purpose to [Defendant's] counsel, which is handling all three cases." Reply at 4 n.3. Because I lack information with regard to these proceedings, I cannot determine whether Plaintiff has met its burden of demonstrating that Wells Fargo has improperly refused or neglected to bring an action against Defendant on Plaintiff's behalf. Accordingly, I find dismissal at this time to be unwarranted.

In its response to the present Motion, Plaintiff requests leave to amend the Complaint pursuant to Federal Rule of Civil Procedure 15, and it suggests that Wells Fargo could be substituted as plaintiff under Rule 17(a)(3). That rule provides:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

Fed. R. Civ. P. 17(a)(3). If Plaintiff seeks to amend the Complaint, it must seek leave of the Court through a separate Motion. *See Calderon v. Kansas Dep't of Social And Rehabilitation Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999) ("a court need not grant

leave to amend when a party fails to file a formal motion"). Amendment of the complaint would be limited to Plaintiff's explanation of Wells Fargo's refusal to bring an action initially and to substitute itself for Plaintiff. See *Velez*, 451 N.Y.S.2d at 115 (finding that in a derivative action brought by beneficiaries on behalf of the trust, "the complaint must set forth 'with particularity' the efforts of the plaintiffs to secure the initiation of the action by the trustees, or the reasons for not making such effort"); *Chicago Pneumatic Tool Co. v. Hughes Tool Co.*, 192 F.2d 620, 631 (10th Cir. 1951) (holding that courts have discretion not only to allow or deny amendments, but also to permit them "with reasonable conditions and limitations"). In other words, amendment would be limited to providing justification for why Plaintiff should be allowed to pursue the asserted cause of action on its own behalf. Should Plaintiff choose to pursue one of these courses of action, Defendant would then have the opportunity to respond to all such pleadings. These pleadings would further provide the parties an opportunity to inform the Court of the nature of the California state court proceedings.

**C. Promissory Estoppel**

Plaintiff alleges two equitable quasi-contract claims, in addition to its contract claim. Because these are equitable claims, they are not guided by the choice of law provision of the contract, and accordingly I must apply Colorado law. First, the cause of action for promissory estoppel requires that "(1) the promisor made a promise to the promisee; (2) the promisor should reasonably have expected that the promise would induce action or forbearance by the promisee; (3) the promisee in fact reasonably relied on the promise to the promisee's detriment; and (4) the promise must be enforced to

prevent injustice." *Patzer v. City of Loveland*, 80 P.3d 908, 912 (Colo. App. 2003). Plaintiff argues that it reasonably relied on the promises made by Defendant in the Servicing Agreement to service the loans and remit funds to the trusts. Complaint at 9. However, as Plaintiff acknowledges, promissory estoppel provides a remedy in the absence of a formal agreement. *See Wheat Ridge Urban Renewal Auth. v. The Cornerstone Group XXII, L.L.C.*, 176 P.3d 737, 741 (Colo. 2007). Accordingly, "[r]ecovery on a theory of promissory estoppel is incompatible with the existence of an enforceable contract." *Id*. In the present case, there is an enforceable contract, and Plaintiff already has remedy in equity, which is to sue both Wells Fargo and Defendant if Wells Fargo has refused or neglected to bring an action on Plaintiff's behalf. *See* Restatement (Second) of Trusts § 282(2). Accordingly, Plaintiff's equitable cause of action for promissory estoppel is dismissed with prejudice.

**D. Unjust Enrichment**

Plaintiff also asserts a cause of action for unjust enrichment, which "requires that (1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying." *Nicholls v. Zurich Am. Ins. Group*, 244 F. Supp. 2d 1144, 1165 (D. Colo. 2003); *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1007 (Colo. 2008). Plaintiff argues that Defendant was unjustly enriched at Plaintiff's expense when Defendant withheld funds from the trusts to repay itself for servicing advances that were in violation of the Servicing Agreement and applicable industry standards. Complaint at 11. Plaintiff's claim, again, must fail because unjust enrichment is not a viable theory of recovery where there is an

express contract governing the conduct. *See Specialized Grading Enters., Inc. v. Goodland Constr., Inc.*, 181 P.3d 352, 354 (Colo. App. 2007) ("If an express contract exists, there can be no implied contract covering the same subject matter between the parties because the provisions of the express contract supersede those of the implied contract . . . ."); *Stanford v. Ronald H. Mayer Real Estate, Inc.*, 849 P.2d 921, 923 (Colo. App. 1993). Thus, Plaintiff's cause of action for unjust enrichment is dismissed with prejudice.

## CONCLUSION

Based on the foregoing, it is hereby

ORDERED that Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) [doc. #19, filed March 28, 2008] is **GRANTED in part and DENIED in part**. It is denied as to Plaintiff's first claim for relief and granted as to Plaintiff's second and third claims for relief. Accordingly, it is

ORDERED that Plaintiff's second and third claims for relief are **DISMISSED WITH PREJUDICE**.

Dated: March 25, 2009

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge